IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JENNIFER MARIE TOY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-1653-LPS-SRF |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Plaintiff Jennifer Marie Toy ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) on December 4, 2020 against the defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). (D.I. 2) Plaintiff seeks judicial review of the Commissioner's December 16, 2019 final decision, denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434 and §§ 1381-1383f. Currently before the court are cross-motions for summary judgment filed by Plaintiff and the Commissioner.[2] (D.I. 14; D.I. 16) Plaintiff asks the court to reverse the Commissioner's decision and remand for further administrative proceedings. (D.I. 15 at 17) The Commissioner requests that the court affirm the ALJ's decision. (D.I. 17 at 15) For the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted as Defendant in place of Andrew Saul.
[2] The briefing associated with the pending motions is found at D.I. 15 and D.I. 17. On August 27, 2021, Plaintiff filed a notice indicating her intention to rest on her opening brief. (D.I. 18)

reasons set forth below, I recommend that the court DENY Plaintiff's motion for summary judgment (D.I. 14), and GRANT the Commissioner's cross-motion for summary judgment (D.I. 16).

## II. BACKGROUND

### A. Procedural History

Plaintiff protectively filed applications for DIB and SSI on August 7, 2017 and September 14, 2017, respectively, alleging a disability onset date of April 20, 2017 due to bipolar disorder, depression, and anxiety. (D.I. 11 at 15, 255-66, 283) Plaintiff's claims were denied initially and again on reconsideration. (*Id.* at 114-77) At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on October 29, 2019. (*Id.* at 66-113) The ALJ issued an unfavorable decision on December 16, 2019, finding that Plaintiff was not disabled under the Act. (*Id.* at 15-28) The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 6-8)

Plaintiff brought this civil action challenging the ALJ's decision on December 4, 2020. (D.I. 2) Plaintiff filed a motion for summary judgment on July 19, 2021 (D.I. 14), and the Commissioner cross-moved for summary judgment on August 18, 2021 (D.I. 16). Briefing is now complete on the pending motions.

### B. Medical History

#### 1. Medical evidence

Plaintiff was 39 years old on April 20, 2017, her alleged disability onset date. (D.I. 11 at 26) Plaintiff has a high school degree and two years of college, and she has past relevant work as a retail cashier. (*Id.* at 70-71) The ALJ found that Plaintiff had the following severe

2

impairments: bipolar disorder, depression, and anxiety. (*Id.* at 18) The focus of Plaintiff's motion for summary judgment is on the adequacy of the ALJ's assessment of the medical opinion evidence. (D.I. 15)

Plaintiff was hospitalized in November 2015 after attempting suicide by overdosing on pain medication. (D.I. 11 at 453) She was involuntarily committed to the inpatient unit at the MeadowWood Psychiatric center for five days. (*Id.* at 453, 455-56, 502) Records from MeadowWood indicate that Plaintiff was diagnosed with severe major depressive disorder and impulse control disorder, but her condition improved with medication management and psychotherapeutic activities. (*Id.* at 504)

Plaintiff was hospitalized for suicidal ideation a second time in June 2017, and she was discharged to inpatient treatment at MeadowWood with a diagnosis of major depressive disorder, anxiety, and bipolar disorder. (*Id.* at 513-16) When she was discharged from MeadowWood, Plaintiff was sleeping better, her appetite had improved, her depression was under control, and she denied any suicidal ideations. (*Id.* at 546) Over the next few months, Plaintiff's care providers at Westside Family Healthcare noted overall improvements in her symptoms, particularly after Plaintiff and her husband were able to avoid eviction, and they adjusted her medications to eliminate side effects such as blackouts, hallucinations, and skin rashes. (*Id.* at 566, 568, 575-76, 578, 580, 585, 587, 589)

In early 2018, Plaintiff reported feeling more balanced and less depressed, and she was able to return to work part-time. (*Id.* at 624, 626, 630) However, she was hospitalized for suicidal ideation again in August 2018 and was thereafter admitted to Rockford Center for treatment of her bipolar disorder and adjustment of her medications. (*Id.* at 789, 819-23) By September 2018, Plaintiff reported that her mood was stable and she was working three days per

week. (*Id.* at 885) During the ensuing months, Plaintiff indicated that it was difficult for her to function at work, and she experienced increased anxiety and panic attacks due to work-related stress. (*Id.* at 852, 902) Plaintiff reduced her work schedule to two days per week, and by August 2019, she reported that she was feeling much better with fewer side effects from her medication. (*Id.* at 796-818, 924)

### 2. Medical opinions

Plaintiff attended a consultative psychological exam with Ramnik Singh, M.D. in February 2018. (D.I. 11 at 778) Dr. Singh observed that Plaintiff was well groomed and made good eye contact, but her affect was blunted, her mood was irritable, and she was hyperverbal but redirectable. (*Id.* at 779) Upon examination, Plaintiff exhibited no abnormalities in her thought process and no hallucinations, paranoia, or suicidal or homicidal ideation. (*Id.*) Her memory was intact. (*Id.*) Dr. Singh diagnosed Plaintiff with bipolar disorder and gave her a global assessment of functioning ("GAF") score of 65. (*Id.* at 780) Dr. Singh estimated that Plaintiff would have moderate limitations in her ability to perform work-related tasks, interact with others, and perform activities of daily living. (*Id.* at 781-82)

In December 2018, Plaintiff's primary care physician Victoria Shertel, D.O., completed a Psychological Functional Capacity evaluation regarding Plaintiff's condition. (*Id.* at 786-88) Dr. Shertel opined that Plaintiff's ability to work 40 hours per week depended on how well her symptoms were controlled. (*Id.* at 786) According to Dr. Shertel, Plaintiff had moderate to severe restrictions in activities of daily living and the ability to sustain work performance and attendance in a normal work setting. (*Id.* at 787-88) In January 2019, Dr. Shertel completed another health assessment in which she reported that Plaintiff cannot participate in a small group setting, be punctual and keep a schedule, or participate in a training program, but she is able to

independently complete activities of daily living and follow written and verbal directions. (*Id.* at 926-27) Dr. Shertel indicated that, despite ongoing behavioral health treatment and medication, Plaintiff's mood was not yet stable enough to sustain a return to work, and she estimated that Plaintiff would be unable to work for a period of six to nine months.[3] (*Id.*)

Ngozi Chiekwu, a psychiatric mental health nurse practitioner, completed a Psychological Functional Capacity assessment in October 2019, opining that Plaintiff does not have the ability to work full-time due to her manic and depressive episodes, which contribute to a lack of focus and concentration and an inability to remain on task. (*Id.* at 930-31) Ms. Chiekwu opined that Plaintiff had severe limitations in her ability to sustain work performance and attendance and to cope with the pressures of ordinary work, and moderate limitations in her ability to understand and follow instructions and perform routine, repetitive tasks. (*Id.* at 932)

### C. Hearing Before the ALJ

#### 1. Plaintiff's Testimony

At the administrative hearing on October 29, 2019, Plaintiff testified that she has a high school diploma and an associate's degree in fine art. (D.I. 11 at 70-71) At the time of the hearing, Plaintiff testified that she was working a six-hour shift one day per week as a store cashier. (*Id.* at 71-72) Plaintiff also worked at the store from 2004 to 2015 as the night manager, which involved the additional duties of completing closing paperwork, locking up the store, checking in orders, and managing an employee. (*Id.* at 72-74) From 2015 to 2016, Plaintiff testified that she performed cashier and stocking duties at a retail store. (*Id.* at 74)

Plaintiff testified that she lives with her husband and two cats in a single-family home.

---

[3] The law is well-established that medical source opinions regarding whether a claimant is disabled or unable to work are reserved for the Commissioner and are not given any weight. *See Moore v. Colvin*, 239 F. Supp. 3d 845, 859 (D. Del. 2017).

(*Id.* at 75-76) Plaintiff indicated that she is able to care for her cats, but she has not driven a car for about ten years because she lacks the concentration to do so. (*Id.* at 76)

Plaintiff explained that she was hospitalized in 2015 after making a suicide attempt upon losing her job. (*Id.* at 77-78) When she was released from the hospital, she was involuntarily committed to MeadowWood and thereafter received outpatient treatment at Westside Medical, where she was diagnosed with bipolar disorder. (*Id.* at 77-79) Plaintiff testified that some of the psychotropic medications she was prescribed made her hallucinate, black out, and break out in rashes, and she still had not achieved a stable medication regimen at the time of the hearing. (*Id.* at 79-80)

Plaintiff was hospitalized and transferred to MeadowWood again in 2017 because her condition was unstable and her medication required adjustment. (*Id.* at 80-81) At that time, Plaintiff reported having difficulty leaving her house. (*Id.* at 82) She was brought to the emergency room again in 2018 for suicidal ideation and was subsequently admitted to Rockford Center, where her medications were adjusted and she experienced negative side effects. (*Id.* at 81)

At home, Plaintiff testified that she spends her time cleaning, but she lacks the concentration to maintain her former hobbies. (*Id.* at 87) Although she occasionally goes grocery shopping, she does not often leave the house. (*Id.* at 88) Her friends sometimes come to visit her, but she does not go out with them. (*Id.*) Plaintiff reported that her sleep schedule varies, and she sometimes naps because her medications make her drowsy. (*Id.*)

Plaintiff's husband, Jeffrey Toy, testified that he had been married to Plaintiff for thirteen years at the time of the hearing. (*Id.* at 89-90) Mr. Toy explained that he made a special room in their house filled with things Plaintiff enjoys as a retreat during her depressive symptoms, but

6

most of the time she stays in the fetal position in a reclining chair. (*Id.* at 92-94) He testified that she does laundry when necessary, she sometimes cooks, and she is able to independently walk or take the bus to her medical appointments. (*Id.* at 94-95, 100-01) Mr. Toy indicated that Plaintiff's condition improved when she reduced her schedule from three days a week to one day a week and relinquished her managerial responsibilities. (*Id.* at 100)

### 2. Vocational Expert Testimony Before the ALJ

At the administrative hearing, the ALJ posed the following hypothetical to vocational expert ("VE"):

> [P]lease assume an individual of the claimant's age, education and experience. If such an individual is never able to climb ladders, ropes or scaffolds, never able to tolerate exposure to hazards such as moving machinery or unprotected heights, that the individual can perform no more than simple, routine, repetitive tasks and cannot work at a production pace, so no assembly line type work. If the individual is limited to simple work related decisions and can tolerate no more than a few changes in a routine work setting, if the individual can frequently interact with supervisors and coworkers but work in tandem or directly with others no more than occasional, and interacting with the public no more than occasional. Would such an individual be able to perform the claimant's past work?

(D.I. 11 at 106-07) In response to the ALJ's hypothetical, the VE testified that such a hypothetical individual could not perform Plaintiff's former work as a retail cashier because her past work was semiskilled. (*Id.* at 107) However, the VE testified that the hypothetical individual could perform work at a medium physical demand level as a laundry worker, a packager, or a kitchen helper. (*Id.*)

The ALJ then asked the VE to consider whether any positions would be available for the hypothetical individual at a light or sedentary exertional level. (*Id.* at 108) The VE responded that Plaintiff could perform work as a mail clerk or an electronics worker at the light exertional level, and she could work as a document preparer or final assembler at the sedentary exertional

7

level. (*Id.*)

Plaintiff's counsel asked the VE about an employer's tolerance for off task behavior and absences. (*Id.*) The VE responded that an employer would tolerate an employee's off task behavior for no more than 10% of the workday, and absences of one day per month or ten days per year are work preclusive. (*Id.*)

### D. The ALJ's Findings

Based on the factual evidence in the record and the testimony by Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under the Act for the relevant time period beginning on April 20, 2017. (D.I. 11 at 17-28) The ALJ found, in pertinent part:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since April 20, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant cannot climb ladders, ropes, or scaffolds, and cannot be exposed to hazards. The claimant can perform simple, routine, and repetitive tasks, not at a production pace and involving no more than simple work-related decisions, with few changes in a routine work setting. She can have frequent interaction with supervisors and coworkers, perform occasional tandem work, and have occasional interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 21, 1977 and was 39 years old, which is

8

   defined as a younger individual age 18-49, on the alleged disability onset date
   (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate
   in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability
   because using the Medical-Vocational Rules as a framework supports a
   finding that the claimant is "not disabled," whether or not the claimant has
   transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P,
   Appendix 2).

10. Considering the claimant's age, education, work experience, and residual
    functional capacity, there are jobs that exist in significant numbers in the
    national economy that the claimant can perform (20 CFR 404.1569(a),
    416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security
    Act, from April 20, 2017, through the date of this decision (20 CFR
    404.1520(g) and 416.920(g)).

(D.I. 11 at 17-28)

## III. STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "more than a mere scintilla" of evidence. *Id.*

9

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Act affords insurance benefits to people who contributed to the program and who have a disability. *See Pearson*, 839 F. App'x at 687 (citing 42 U.S.C. § 423(a)(1)). A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). To qualify for disability insurance benefits, a claimant must establish disability prior to the date last insured. 20 C.F.R. § 404.131 (2016); *Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014). Title XVI of the Act "provides for the payment of disability benefits to indigent persons under the Supplemental Security Income program." *Bowen v. Yucket*, 482 U.S. 137, 140 (1987); 42 U.S.C. § 1381(a).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires

the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at §§ 404.1520(e), 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she

11

is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

### B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff's motion for summary judgment focuses on whether the ALJ properly evaluated the medical opinion evidence. (D.I. 15 at 6-17) In accordance with the revised regulatory framework for claims filed on or after March 27, 2017, which eliminated the treating physician rule, an ALJ is not required to give any "specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a] medical source." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, the ALJ must consider the persuasiveness of all medical opinions based on the application of five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Id.* at §§ 404.1520c(a)-(c); 416.920c(a)-(c).

The ALJ must explain how she considered the most important factors of supportability and consistency. *Id.* at §§ 404.1520c(b)(2); 416.920c(b)(2). "Consistency concerns the degree to which the opinion reflects the same limitations described in evidence from other sources, whereas supportability concerns the relevancy of objective medical evidence and degree of explanation given by the medical source to support the limitations assessed in the opinion." *Eader v. Saul*, 2020 WL 10898140, at *3 (M.D. Pa. Nov. 20, 2020) (quoting *Serowski v. Comm'r of Soc. Sec.*, 2020 WL 6383187, at *12-13 (N.D. Ohio Oct. 30, 2020)). There is no requirement for the ALJ to discuss or explain consideration of the remaining factors unless there are two or more medical opinions which are equally well supported and consistent with the record, but not exactly the same, in which case the ALJ must explain how she differentiated the opinions. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3).

In this case, the ALJ determined that the opinion of Plaintiff's treating source, Dr. Shertel, was not persuasive because the restrictive limitations therein were not supported by "the overall benign findings on mental status examinations throughout the relevant time period, including no signs of attention or concentration issues, no memory impairments, and good abilities in coping with her symptoms." (D.I. 11 at 24) The ALJ observed that Plaintiff reported independence in her activities of daily living, and Plaintiff's medical records established that her condition improved with consistent treatment and medication management, allowing her to return to work on a part-time basis as a cashier. (*Id.*) Indeed, the ALJ relied on Dr. Shertel's own treatment records showing that Plaintiff was alert, well nourished, well groomed, and exhibited no acute distress. (*Id.* at 570, 850, 853) The ALJ concluded that this evidence was inconsistent with Dr. Shertel's opinion that Plaintiff had a "moderate severe" degree of impairment in "restriction of daily activities" and in the ability to "sustain work performance and attendance in a normal work setting." (*Id.* at 787-88) In this regard, the ALJ directly addressed the limitations expressed in Dr. Shertel's opinion and articulated why she found them to be inconsistent with Plaintiff's treatment notes and other evidence of record. The ALJ's assessment of Dr. Shertel's opinion meets the standard in the new regulations, and her determination is supported by substantial evidence. *See Laicha v. Kijakazi*, 2021 WL 3929739, at *12 (M.D. Pa. Sept. 2, 2021) (upholding ALJ's rejection of treating source opinion as unpersuasive because "the opinion was inconsistent with his treatment notes . . . as well as [the claimant's] self-reported activities of daily living.").

The same is true of the ALJ's determination that Ms. Chiekwu's opinion was not persuasive because the restrictive limitations therein were not supported by "the overall benign findings on mental status examinations throughout the relevant time period, including no signs of

attention or concentration issues, no memory impairments, and good abilities in coping with her symptoms." (D.I. 11 at 24-25) Ms. Chiekwu opined that Plaintiff suffered moderately severe restrictions in her daily activities and severe restrictions in sustaining work performance and attendance and coping with the pressures of ordinary work, but this opinion is inconsistent with Ms. Chiekwu's own treatment records. (*Id.*) Specifically, Ms. Chiekwu performed a series of mental status exams in which Plaintiff routinely presented as calm and relaxed, she spoke at a normal rate and volume, her affect was appropriate, and she exhibited no signs of hallucinations, delusions, bizarre behaviors, suicidal ideation, anxiety, or hyperactive or attentional difficulties. (*Id.* at 799, 808, 813) Ms. Chiekwu noted that, despite Plaintiff's subjective reports of depression and panic attacks, Plaintiff's mental status exam continued to reveal "no apparent serious mental status abnormalities," with a normal attention span and intact memory and judgment. (*Id.* at 816) Plaintiff's subjective reports of her mental limitations "will not alone establish that [she] is disabled" in the absence of "objective medical evidence from an acceptable medical source[.]" 20 C.F.R. §§ 404.1529(a); 416.929(a).

Pursuant to 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2). Thus, the inquiry regarding consistency is directed to the record as a whole, and not just to the narrow universe of medical opinions. *See Laicha v. Kijakazi*, 2021 WL 3929739, at *12 (M.D. Pa. Sept. 2, 2021) (upholding ALJ's rejection of treating source opinion as unpersuasive because "the opinion was inconsistent with his treatment notes . . . as well as [the claimant's] self-reported activities of daily living.").

Here, the record as a whole contains substantial evidence in support of the ALJ's

14

conclusion that the limitations set forth in the opinions of Dr. Shertel and Ms. Chiekwu are not consistent with Plaintiff's benign mental status examinations and work history throughout the relevant time period. Mental status exams by other providers indicate that Plaintiff was well-groomed and calm, with normal affect and speech and intact short- and long-term memory. (D.I. 11 at 579, 583, 589, 597-98, 606-07, 627, 633) Although Plaintiff exhibited some anxiety and depression, she routinely exhibited normal attention span and ability to concentrate, and she was alert and attentive. (*Id.* at 580, 585, 587, 592, 595, 600, 609, 630, 874, 902, 904, 906, 908, 910, 912, 914, 916, 918, 920, 922, 924) Moreover, Plaintiff's part-time work history during the relevant time period is at odds with Dr. Shertel's opinion that Plaintiff cannot participate in a small group setting or be punctual and keep a schedule and Ms. Chiekwu's opinion that Plaintiff lacks the focus and concentration necessary to sustain work performance and cope with the pressures of ordinary work. (*Id.* at 876, 893, 927, 930-32) For these reasons, substantial evidence supports the ALJ's decision to discount the opinions of Dr. Shertel and Ms. Chiekwu as not persuasive. Because these opinions were not equally well-supported by the administrative record, the ALJ was not required to consider additional factors under 20 C.F.R. §§ 404.1520c and 416.920c beyond consistency and supportability. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Galloway v. Comm'r of Soc. Sec.*, 2021 WL 4477145, at *4 (E.D. Pa. Sept. 30, 2021) (stating that the ALJ is obligated to compare the claimant's routine and conservative medical records with the severe limitations identified in a medical opinion under the applicable case law and controlling regulations).

Plaintiff also challenges the ALJ's assessment of Dr. Singh's opinion. (D.I. 15 at 12-14) The ALJ was persuaded by Dr. Singh's conclusion that Plaintiff has only moderate limitations in functioning because his findings were consistent with the overall normal findings in Plaintiff's

mental status examinations and Plaintiff's reported improvement with therapy and medication management. (D.I. 11 at 22-23) Although Plaintiff suggests that Dr. Singh identified abnormal findings in his mental status examination, Dr. Singh's opinion suggests otherwise. Dr. Singh confirmed that Plaintiff was neatly groomed, her thought process showed no abnormality, and she had no hallucinations, paranoia, or suicidal or homicidal ideation. (D.I. 15 at 13; D.I. 11 at 779) Dr. Singh described Plaintiff as alert and oriented, and he reported that she had no deficits in immediate or remote memory. (D.I. 11 at 779) The only findings Plaintiff characterizes as "abnormal" are Dr. Singh's notes that Plaintiff's affect was blunted and constricted to irritable mood, she was hyperverbal but was redirectable, and she had difficulty doing serial sevens. (*Id.*; D.I. 15 at 12) Plaintiff offers no authority to suggest that observations of this kind are sufficient to render a claimant's mental status examination "abnormal." Plaintiff also offers no authority in support of her position that a physician performing a consultative examination is required to review the claimant's medical records.[4] The ALJ's assessment of Dr. Singh's opinion is supported by substantial evidence in the form of his consultative examination notes, as well as Plaintiff's routinely benign mental status examinations and work history throughout the relevant time period.

---

[4] The regulations provide that the Commissioner will order a consultative examination at its own expense if the claimant's medical sources cannot or will not provide sufficient medical evidence about the impairment to make a disability determination. 20 C.F.R. §§ 404.1512; 404.1517; 416.912; 416.917. In these circumstances, the Commissioner "will also give the [consultative] examiner any necessary background information about [the claimant's] condition." *Id.* The regulations do not articulate any particular level of consideration the consulting physician must give to the existing medical record, perhaps because the purpose of a consultative examination is to remedy a lack of evidence in the record. Regardless, Dr. Singh's assessment demonstrates his awareness of Plaintiff's hospitalizations and psychiatric treatment. (D.I. 11 at 778)

16

## V. CONCLUSION

For the foregoing reasons, I recommend that the court DENY Plaintiff's motion for summary judgment (D.I. 14), and GRANT the Commissioner's cross-motion for summary judgment (D.I. 16).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 31, 2022

Sherry R. Fallon
United States Magistrate Judge